2014-1275

# United States Court of Appeals
# for the Federal Circuit

ALLERGAN, INC.,

*Plaintiff-Appellee*,

*v.*

SANDOZ INC., LUPIN LTD., LUPIN PHARMACEUTICALS, INC.,
HI-TECH PHARMACAL CO., INC., WATSON LABORATORIES, INC.,
WATSON PHARMACEUTICALS, INC., NKA Actavis, Inc., WATSON
PHARMA, INC., NKA Actavis Pharma, Inc.,

*Defendants-Appellants.*

Appeal from the United States District Court for the Eastern District of Texas
Case No. 6:11-CV-441,
Judge Michael H. Schneider.

_____

## CORRECTED
## REPLY BRIEF OF DEFENDANT-APPELLANT
## HI-TECH PHARMACAL CO., INC.

_____

Steven Roth
Locke Lord LLP
3 World Financial Center
New York, NY 10281

Thomas J. Vetter
Lucas & Mercanti, LLP
30 Broad Street
New York, NY 10004

*Counsel for Defendant-Appellant*
*Hi-Tech Pharmacal Co., Inc.*

Dated:  December 5, 2014

**REVISED CERTIFICATE OF INTEREST**
**FOR HI-TECH PHARMACAL CO., INC.**

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4, counsel for Defendant-Appellant Hi-Tech Pharmacal Co., Inc. certifies the following:

1.    The full name of every party represented by me is:

Hi-Tech Pharmacal Co., Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.    All parent corporations and any publically-held companies that own 10% or more of the stock of any party represented by me are:

Akorn, Inc.

4.    The names of all law firms and the partners or associates that have appeared for the parties now represented by us in the trial court or are expected to appear in this Court are:

Steven Roth
Locke Lord LLP
3 World Financial Center
New York, NY 10281

*Formerly*:    Steven Roth
Hi-Tech Pharmacal Co., Inc.
369 Bayview Avenue
Amityville, NY 11701

Thomas J. Vetter
Lucas & Mercanti, LLP
30 Broad Street
New York, NY 10004

i

S. Calvin Capshaw
Elizabeth L. DeRieux
D. Jeffrey Rambin
CAPSHAW DeRIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647

Dated:  December 8, 2014                LUCAS & MERCANTI, LLP


/s/Thomas J. Vetter_____
Thomas J. Vetter
Lucas & Mercanti, LLP
30 Broad Street
New York, NY 10004

*Attorneys for Defendant- Appellant*
*Hi-Tech Pharmacal Co., Inc.*

# TABLE OF CONTENTS

REVISED CERTIFICATE OF INTEREST
FOR HI-TECH PHARMACAL CO., INC. ........................................................... i

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES............................................................................. iv

LIST OF ABBREVIATIONS........................................................................... vi

PRELIMINARY STATEMENT....................................................................... 1

    A.  Hi-Tech Indeed Raised
        the Claim Construction Issue of "About 7.3"............................................ 3

    B.  Allergan Offered No Evidence
        of Literal Infringement ........................................................................... 5

    C.  Allergan Has Not Met Its Burden for
        Overcoming the Presumption
        of Prosecution History Estoppel............................................................. 9

    D.  The District Court's Judgment That
        the '118 and '353 Patents Satisfy
        the Written Description Requirement
        Is Clearly Erroneous and Should Be Reversed ....................................... 16

    E.  The District Court's Judgment That
        the Asserted Claims of
        the '504, '479, '605, '118, and '353 Patents
        Would Not Have Been Obvious
        Should Be Reversed................................................................................ 19

CONCLUSION ............................................................................................. 20

CERTIFICATE OF SERVICE ............................................................... attached

CERTIFICATE OF COMPLIANCE....................................................... attached

# TABLE OF AUTHORITIES

## Cases

*Ariad Pharm., Inc. v. Eli Lilly and Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) ...................................................................... 2, 18

*Blackboard, Inc. v. Desire2Learn, Inc.*
  574 F.3d 1371 (Fed. Cir. 2009) .................................................................4

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) .................................................................4

*Digital-Vending Servs. Int'l., LLC v. University of Phoenix, Inc.*,
  672 F.3d 1270 (Fed. Cir. 2012) .................................................................4

*Felix v. Am. Honda Motor Co., Inc.*,
  562 F.3d 1167 (Fed. Cir. 2009) ...............................................................11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  344 F.3d 1359 (Fed. Cir. 2003) ...............................................................11

*Funai Elec. v. Daewoo Elecs.*,
  616 F.3d 1357 (Fed. Cir. 2010) ...............................................................14

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
  523 F.3d 1304 (Fed. Cir. 2008) ...............................................................15

*In re Cyclobenzaprine HCl Extended-Release Capsule Patent Litigation*,
  676 F.3d 1063 (Fed. Cir. 2012) .................................................................6

*Intervet, Inc. v. Merial Ltd.*,
  617 F.3d 1282 (Fed. Cir. 2010) ...............................................................13

*ITC v. Rudolph Technologies, Inc.*,
  734 F.3d 1352 (Fed. Cir. 2013) ...............................................................15

*Phillips v. AWH Corp.*,
  415 F.3d 1303, (Fed. Cir. 2005) (*en banc*)...........................................5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013) .................................................................4

*Purdue Pharma L.P. v. Faulding Inc.*,
   230 F.3d 1320 (Fed. Cir. 2000) .............................................................18

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
   511 F.3d 1132 (Fed. Cir. 2007) ...............................................................5

*Univ. of Cal. v. Dakocytomation Cal., Inc.*
   517 F.3d 1364 (Fed. Cir. 2008) .............................................................13

*Zenith Labs. v. Bristol-Myers Squibb Co.*,
   19 F.3d 1418 (Fed. Cir. 1994) ...............................................................8

## LIST OF ABBREVIATIONS

"Allergan" means:            Plaintiff-Appellee Allergan, Inc.

"Hi-Tech" means:            Defendant-Appellant Hi-Tech Pharmacal Co., Inc.

"'118 patent" means:        U.S. Patent No. 8,299,118 (A105-A114)

"'353 patent" means:        U.S. Patent No. 8,278,353 (A95-A104)

"'504 patent" means:        U.S. Patent No. 7,851,504 (A89-A94)

"'605 patent" means:        U.S. Patent No. 8,309,605 (A115-A123)

"'479 patent" means:        U.S. Patent No. 8,338,479 (A124-A133)

"BAK" means:                Benzalkonium Chloride

"USP" means:                Unites States Pharmacopeia

"USPTO" or "PTO" means:     United States Patent and Trademark Office

"FDA" means:                United States Food and Drug Administration

"pH claims" mean:           Claim 2 of the '504 patent, claims 1, 6, 10, and 12
                            of the '605 patent, and claim 15 of the '479 patent

# PRELIMINARY STATEMENT

Hi-Tech appeals the District Court's decision of (1) literal infringement of the pH claims, (2) infringement of the pH claims under the doctrine of equivalents and (3) the validity of the asserted claims of the '118 and '353 Patents based on the written description requirement.

Allergan argues that Hi-Tech waived the claim construction issue concerning the range of pH by not raising it below.  But Hi-Tech did raise it below; pre-trial, during trial through expert testimony, and in post-trial briefing. Even if the claim construction issue were waived, the District Court's finding that Hi-Tech literally infringed the pH element was clear error because Allergan's expert offered no basis supporting his opinion that Hi-Tech literally infringed.

Allergan does not dispute that prosecution history estoppel presumptively applies to limit the range of equivalents as to the pH element.  Allergan argues that it has overcome the presumption on the grounds that pH was tangentially related to the prosecution history.  But Allergan has the burden of proof that the rationale underlying the "narrowing amendment" at issue bore no more than a tangential relation to the equivalent in question.  The first step is to provide the rationale for the narrowing amendment.  Here Allergan has not provided *any* rationale for the narrowing amendment at issue – which was the August 18,

2010 amendment, wherein Allergan cancelled all the broad claims (that had no pH element), and put the dependent pH claims in independent form for approval.  Moreover, the only rationale, objectively apparent from the file history, for this amendment, was that in the previous Office Action, the Examiner rejected all the broad claims (that had no pH element) as obvious.  So the only objectively apparent rationale for this amendment was that Allergan agreed with the Examiner that only claims with all the formulation elements – including the pH element – were patentable.

With respect to written description, there is no support in the '118 and '353 patents for the claimed elements that the bimatoprost 0.01% formulation has less hyperemia and at least as much lowering of intraocular pressure ("IOP") as the bimatoprost 0.03% formulation.  Allergan points to a formulation example in the specifications, but the example does not disclose anything about the comparative lowering of hyperemia or IOP.  Allergan argues that Lupin's expert on obviousness testified that the comparative lowering of IOP and hyperemia would be obvious from the specifications.  But obviousness is not the same standard as written description, and this Court has held that "a description that merely renders the invention obvious does not satisfy the [written description] requirement." *Ariad Pharm., Inc. v. Eli Lilly and Co.,* 598 F.3d 1336, 1352 (Fed. Cir. 2010).

## A.    Hi-Tech Indeed Raised
## the Claim Construction Issue of "About 7.3"

Allergan represents that, although the parties agreed during the claim construction phase of the case that "about" means "approximately," Hi-Tech "never asked for further construction." (Appellee's Br. p. 57.)  Allergan is wrong.

Hi-Tech presented evidence at trial that a pH of about/approximately 7.3 means a range of 7.25 to 7.34 in (1) its pre-trial briefs (A4312-14, A4791), (2) during trial, through the testimony of its expert witness, Dr. Egbaria (A5589-90), and (3) in its post-trial briefing (A6512). [1]

Hi-Tech's evidence of the range of approximately 7.3 was based on (1) the ±0.02 range of error in a typical pH measuring device, (2) the industry standard for rounding numerical values as set forth in the USP, and (3) the patent specification formulation examples, some specified a pH of 7.3 and others specified a pH of 7.4, demonstrating that the 0.1 difference is significant and can be measured. (A5589-90.)  In fact, during prosecution, Allergan amended the claim element "about 7.4" to read "about 7.3," further

---

[1]  Hi-Tech also raised the issue in detail in the expert report of its formulation expert, Dr. Kamel Egbaria, which paved the way for him to so testify at trial.

demonstrating the significance of the 0.1 difference. (A26501-503,

Amendment, dated July 7, 2010, claims 4, 10 and 11.)

Allergan's reliance on *Digital-Vending Servs. Int'l., LLC v. University of Phoenix, Inc.*, 672 F.3d 1270, 1278 (Fed. Cir. 2012) for the proposition that Hi-Tech cannot raise a claim construction issue for the first time on appeal is misplaced because Hi-Tech did *not* raise it for the first time on appeal.  Hi-Tech raised it before and during trial, giving Allergan and the District Court ample time to address the issue. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370-71 (Fed. Cir. 2002) ("we look to see whether the trial court and the party claiming waiver had fair notice and an opportunity to address the issue concerning the scope of the claim limitation"); *Blackboard, Inc. v. Desire2Learn, Inc*. 574 F.3d 1371, 1378 (Fed. Cir. 2009) ("Desire2Learn made its position on that [claim construction] issue clear sufficiently in time to not mislead its adversary or the court, and that counsel's remarks [to the contrary] at the *Markman* hearing did not waive that argument").

Nevertheless, even if Hi-Tech waived the claim construction issue, the District Court's finding that a pH of 7.2 falls within the range of "approximately 7.3" was *clear error*, because, as discussed below, this finding relied on an expert who had no basis for his opinion, and was not even qualified to testify on the issue.  *See Power Integrations, Inc. v. Fairchild Semiconductor*

4

*Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013) ("[W]e find that the district court abused its discretion in admitting Dr. Troxel's testimony, which was both unreliable and based on insufficient data."); *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132 (Fed. Cir. 2007) ("We attribute no weight to that testimony because the experts did not identify any evidence that those skilled in the art would recognize that 'controlled amount,' or any term used in the specification, has an accepted meaning in the field of chemistry."); *Phillips v. AWH Corp.*, 415 F.3d 1303, (Fed. Cir. 2005) (*en banc*) ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court.")

### B.    Allergan Offered No Evidence of Literal Infringement

Allergan recasts Hi-Tech's non-infringement position to one that it can more easily respond to. Hi-Tech's argument for no literal infringement is that the high end of the pH "shelf life" specification in its ANDA is 7.2, which is outside the range of 7.25 to 7.34. Hi-Tech introduced evidence of the pH specification on manufacture (6.8-7.1) and stability data (never higher than 7.1) only to show that the pH will never even reach 7.2. But Hi-Tech's no literal infringement argument is that even a pH of 7.2 will not literally infringe.

Allergan's *sole* evidence at trial of literal infringement is that its

ophthalmologist expert, Dr. Noecker, testified that "certainly 7.2 is

approximately or about 7.3" (A5509).

Dr. Noecker, is **not** a formulator, and he pointed to **nothing** in support

of his opinion that a pH of 7.2 is literally within "approximately" 7.3. *See In re

Cyclobenzaprine HCl Extended-Release Capsule Patent Litigation,* 676 F.3d

1063, 1072 n.2 (Fed. Cir. 2012) ("While it might appear to the layperson that

129.5% is 'about' 125%, expert testimony is necessary to establish how a

person having ordinary skill in the art would perceive these figures.  We have

no way of knowing the importance of even small differences in these

percentages in the absence of some evidence in the record addressing this

point.")  While it may appear to a layperson that a pH difference of 0.1 is

within the range of "approximately," pH is on a logarithmic scale so even a

numerically small difference can be significant.  Moreover, as discussed

above, Hi-Tech introduced evidence at trial as to the error in pH measurement,

from USP standards, and from the prosecution history, to demonstrate that a

difference of 0.1 is significant. (*Supra*, pp. 3-4.)

Allergan argues that Hi-Tech waived the argument that Dr. Noecker's

testimony was unsupported, because Hi-Tech did not tell the Judge below that

Dr. Noecker's testimony was "conclusory." (Allergan's Br., p. 58.)  This is

6

untrue. Hi-Tech, in its post-trial briefing, indeed argued that Dr. Egbaria was the *only* witness who provided a basis of his opinion concerning the range of "approximately 7.3," and further argued to the District Court that Dr. Noecker did not dispute Hi-Tech's evidence. (A6506.)

Instead of denying that Dr. Noecker's testimony had no basis, Allergan argues that it "had limited trial time to prove infringement of 21 claims by 4 defendants." (Allergan's Br., p. 58.) How much time should it take to provide *some* basis for his opinion that approximately 7.3 literally covers 7.2? Hi-Tech's expert, Dr. Egbaria, was able to address the issue in only a few minutes.[2] In any event, it was Allergan's decision to assert 21 claims, and it was its responsibility to make time to offer sufficient evidence of infringement as to each claim it chose to assert.

Allergan argues that Dr. Noecker is qualified because, as an ophthalmologist, he knows that pH is tied to patient comfort. (Allergan's Br., p. 58.) First, Dr. Noecker never testified that patient comfort was the basis of his opinion on literal infringement; he only discussed patient comfort in the context of infringement under the doctrine of equivalents. Moreover, if patient

---

2  Allergan suggests that Dr. Egbaria's testimony is unreliable because his stock options and bonus allegedly depend on whether Hi-Tech wins this case. (Allergan's Br., p. 58.)  Hi-Tech refuted this argument at trial (A6506), and the District Court made no findings on this point.

comfort is the determinative factor for the literal range of "about" (which he never said) then Dr. Noecker's testimony would be self-contradictory.  On the one hand, Dr. Noecker testified (when discussing equivalents) that a pH of 7.0 is equally comfortable to a pH of 7.3 (A5517); and on the other hand, Dr. Noecker admitted that a pH of 7.1 is *not* within the literal range of about/approximately 7.3 (A5542).  If pH 7.0, 7.1, 7.2 and 7.3 are all equally comfortable for patients, what is the basis of his opinion that 7.1 is not literally within "about 7.3"?  The answer of course is that patient comfort has nothing to do with the issue of whether a pH of 7.2 is literally within "about 7.3."

Allergan also points to a statement in a Hi-Tech document that the pH of its product is "very similar" to the pH of Allergan's product. (Allergan's Br., p. 58.)  First, while in theory this statement could have relevance to infringement under the doctrine of equivalents, it does not have relevance to literal infringement.  Second, the statement comparing the pH of Hi-Tech's product to the pH of Allergan's product is irrelevant to infringement.  The proper inquiry for infringement is the comparison of the allegedly infringing product to the patent claims at issue, not to the patentee's commercial product. See *Zenith Labs. v. Bristol-Myers Squibb Co.,* 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's

commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent.")  While there may be instances where such a comparison is relevant to infringement, this is not one of them.  The pH of Allergan's commercial product is in the range of 6.8-7.8 (A44443).  Hi-Tech's statement that its pH of 6.8-7.2 is similar to 6.8-7.8 was based on the fact that it falls within the pH of Allergan's product (A5601) – and has nothing to do with whether Hi-Tech's pH literally falls within the claimed element of "approximately 7.3."

### C. Allergan Has Not Met Its Burden for Overcoming the Presumption of Prosecution History Estoppel

Allergan does not dispute that prosecution history estoppel presumptively applies to limit the range of equivalents as to the pH limitation.

Nevertheless, Allergan argues that it has overcome the presumption on the grounds that pH was tangential to the prosecution history.  In doing so, Allergan focuses entirely on what transpired during prosecution up to the decision of the Board of Patent Appeals and Interferences.  But the basis for estoppel is what transpired *after* the Board decision.

To summarize, here is what happened *after* the Board decision, which was dated May 10, 2010 (A26492):

- Allergan filed an amendment, dated June 16, 2010, with new and amended claims. (A26501-503.)  For the first time, Allergan introduced claims specifically to 0.01% bimatoprost and 200 ppm (0.02%) BAK: claims 7, 8, 14 and 17. (Previously the claims had 0.015% bimatoprost.)  Allergan also amended claims 4, 10 and 11 (the more narrow full formulation claims that included pH) to change 0.015% to 0.01% bimatoprost.

- In the July 7, 2010 Office Action, the Examiner rejected the new and amended claims, allowing only claims 4, 10 and 11 (the full formulation - pH claims). (A26513-518.)  The Examiner rejected as obvious all the other claims. (A26517.)

- In the final amendment, dated August 18, 2010, Allergan agreed to the Examiner's action and cancelled every claim, except claims 4, 10 and 11, which it rewrote in independent form for allowance by the Patent Office. (A26768-771.) These three claims became claims 1, 2 and 3, respectively, of the '504 patent.

The "narrowing amendment" at issue here is the August 18, 2010 amendment, in which Allergan cancelled every claim except the full formulation claims that included the pH limitation.

A patentee may rebut the presumption of estoppel by showing that the rationale underlying a "narrowing amendment" bore no more than a "tangential relation to the equivalent in question." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1365 (Fed. Cir. 2003). In doing so, a patentee is limited to the "objectively apparent reason for the narrowing amendment" that is discernable from the prosecution history record. *Id*. at 1369.

Allergan has the burden of proving an objectively apparent rationale for cancelling all the claims except the full formulation claims. But Allergan has not provided *any* rationale for that amendment, let alone a rationale that is objectively apparent from the file history. Accordingly, it has not overcome the presumption of prosecution history estoppel. *See Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1184 (Fed. Cir. 2009) ("Felix has identified no explanation in the prosecution history for the addition of the gasket limitation, and Felix therefore cannot meet its burden to show that the rationale for adding the gasket limitation was tangential to the presence and position of a gasket.")

11

Nevertheless, the only "objectively apparent" reason discernable from the file history for cancelling all the claims except the pH-formulation claims was that the Examiner had rejected all the other claims as obvious. (A26517.) It cannot be denied that, on July 7, 2010, the Examiner rejected *as obvious* those claims that included 0.01% bimatoprost and 200 ppm BAK as the *only* formulation elements (*e.g.*, claims 7, 8 and 14). (A26517.) It cannot be denied that the Examiner, on July 7, 2010, only allowed claims with all the formulation elements – including the pH element (claims 4, 10 and 11). (A26513-518.) And it cannot be denied that, on August 18, 2010, Allergan cancelled all the claims rejected by the Examiner. (A26768-771.)

The only objective conclusion one can draw from these events is that the rationale of Allergan for cancelling every claim except for the full formulation claims is that it agreed with the Examiner that claims with 0.01% bimatoprost and 200 ppm BAK as the only formulation elements were *not* patentable, and that only claims with *all* the formulation elements – including the pH element – were patentable. Accordingly *all* the formulation elements were important to patentability – *none* were tangential.

Allergan cites a few cases generally holding that the rationale underlying an amendment was tangential to the equivalent in question, but in

12

each case the rationale underlying the amendment was objectively apparent from the file history and bore no relation to the equivalent at issue.

For example, in *Univ. of Cal. v. Dakocytomation Cal., Inc.* 517 F.3d 1364 (Fed. Cir. 2008): (1) original claims covering *any* method of disabling the hybridization capacity of nucleic acid sequences were amended to only claim the "blocking" method; (2) the rationale underlying this amendment was that the prior art described other methods; and (3) the equivalent at issue was whether the accused synthetic nucleic acids ("PNA") infringed the claimed human nucleic acids ("DNA"). This Court held that the type of nucleic acid (PNA v. DNA) was tangential to the rationale underlying the amendment, which was to limit the claims to the "blocking" method of disabling hybridization. *Id.* at 1378.

In *Intervet, Inc. v. Merial Ltd.*, 617 F.3d 1282 (Fed. Cir. 2010): (1) original claims to isolated nucleotide sequences (known as ORFs 1-13) were amended to limit the genome to "PCV-2"; (2) the rationale underlying this amendment was to avoid the "PCV-1" genome, which was described in the specification to be outside the invention; and (3) the infringing equivalent genome was 99.7% homologous to PCV-2. In holding that the accused genome is equivalent to the claimed PCV-2 genome, this Court explained that "[t]he rationale for the amendment was to narrow the claimed universe of

13

ORFs down to those of PCV-2, and bore only a tangential relation to the question of which DNA sequences are and are not properly characterized as PCV-2." *Id*. at 1292.

In *Funai Elec. v. Daewoo Elecs*., 616 F.3d 1357 (Fed. Cir. 2010): (1) original independent claims for preventing propagation of motor noise were cancelled and dependent claims which included an "insulating material" were put in independent form for allowance; (2) the rationale underlying the amendment was other than the insulation element because the cancelled independent claim also had an insulation element; and (3) the equivalent at issue was the type of insulation. This Court held that the rationale underlying the amendment was other than the type of insulating material. *Id*. at 1369.

Unlike the cases Allergan cited in which the element at issue was not related to the rationale underlying the amendment giving rise to the presumption of estoppel, the pH element in this case was directly related to the amendment at issue. In this case: (1) Allergan, in the August 18, 2010 Amendment, cancelled all claims with 0.01% bimatoprost and 200 ppm BAK as the only formulation element and rewrote in independent form the claims that had all the formulation elements, including the pH element; (2) the only rationale discernable from the file history is that on July 7, 2010, the Examiner rejected all the claims as obvious except the claims that had all the formulation

14

elements; and (3) the non-infringing element at issue is one of those formulation elements - the pH element.

In *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304 (Fed. Cir. 2008) the Patent Office rejected independent claims as obvious, and, just as in the present case, the patent applicants cancelled those claims and rewrote dependent claims having additional limitations, including an "IGV" limitation, as new independent claims**.** This Court held that "because the alleged equivalent focuses on the IGV limitation, the amendment bore a direct, not merely tangential, relation to the equivalent." *Id*. at 1316. The patentees in this case cancelled the independent claims and re-wrote dependent claims having the pH limitation as new independent claims. Just as in *Honeywell*, because the equivalent at issue is the pH limitation, the amendment bore a direct relation to the equivalent.

It is not relevant whether the pH element was in the prior art or whether Allergan could have successfully overcome the Examiner's rejection by argument had it chose that strategy; what is relevant is that Allergan relinquished non-infringing equivalents of the pH element, when in response to the Examiner's obviousness rejection of claims that did not have the pH element, Allergan chose to cancel those claims and secure only those claims that did. *See ITC v. Rudolph Technologies, Inc*., 734 F.3d 1352, 1358

15

(Fed. Cir. 2013) ("It may be that ITC did not need to surrender a lack of physical contact between the probe tip and window in either state to overcome Sato. The dispositive fact is that ITC chose to do so.")

To be sure, in response to the July 7, 2010 rejection of the claims containing only 0.01% bimatoprost and 200 ppm BAK, Allergan could have argued that these new claims are not substantially different from the claims containing 0.015% bimatoprost that the Board previously stated were allowable. Allergan could also have tried to present evidence that just as the 0.015% bimatoprost formulation claims were allowable, so are the 0.01% formulation claims. But Allergan chose not to present that evidence or make those arguments. Instead, Allergan accepted the Examiner's rejection of the broad claims, and pursued only claims with all the formulation elements, including the pH element, for allowance. Allergan should now be bound by that decision.

> **D.    The District Court's Judgment That
> the '118 and '353 Patents Satisfy
> the Written Description Requirement
> Is Clearly Erroneous and Should Be Reversed**

Claims 1 and 8 of the '118 and '353 patents claim that the once daily administration of 0.01% bimatoprost and 0.02% (200 ppm) BAK result in less

hyperemia than the once daily administration of 0.03% bimatoprost and 0.005% BAK. (A26076; A26086.)

Claims 7 and 8 of the '118 and '353 patents claim that the once daily administration of 0.01% bimatoprost and 0.02% BAK (200 ppm) lower intraocular pressure with nearly equivalent intraocular pressure lowering benefit as compared to the once daily administration of a composition comprising 0.03% bimatoprost and 0.005% BAK. (Id.)

As discussed in Hi-Tech's opening brief, nowhere in the '118 and '353 patent specifications is there support for the comparative intraocular pressure (IOP) and hyperemia elements of the claims. In its opposition, Allergan focuses on an example in the patent specification of a formulation containing 0.01% bimatoprost and 200 ppm BAK (A102, A112), which it describes as the "best mode." (Allergan's Br., p. 50.)  Putting aside the fact that *all* the examples in the patents are prefaced with the general statement that they are the best mode (A101, A112), the particular example identified by Allergan makes no mention of comparative hyperemia or IOP – it just specifies the formulation.  There is no mention in the example, or anywhere else in the patents, that the 0.01% bimatoprost formulation provides lower hyperemia and at least as much IOP lowering as the 0.03% bimatoprost formulation.

17

Allergan argues that clinical data is not necessary to satisfy the written description requirement. (Allergan's Br., p. 51.)  This argument is a red-herring. The written description problem is *not* the lack of clinical data; it is the lack of *any* indication to a person of ordinary skill in the art reading the patent specifications that the bimatoprost 0.01% formulation provides less hyperemia and at least as much IOP lowering as the bimatoprost 0.03% formulation.

Allergan argues that Lupin's obviousness expert testified that the clinical performance of Lumigan 0.01% was predictable from the patent specification. (Allergan's Br., p. 51.)  But obviousness is not the same legal standard as written description. Obviousness is based on reasonable expectation of success; written description is based on the immediate discernment of the limitation at issue in the specification. *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) ("Put another way, one skilled in the art, reading the original disclosure, must immediately discern the limitation at issue in the claims.").  A claim can be obvious from the specification, but still lack written description. *See Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) ("a description that merely renders the invention obvious does not satisfy the [written description] requirement.")  Accordingly, Lupin's expert's testimony that the clinical elements of the claims are predictable or obvious from the specifications does not satisfy the written description

18

requirement, which would require that one of ordinary skill in the art

"immediately discern" those elements from the specifications.

**E.    The District Court's Judgment That
the Asserted Claims of
the '504, '479, '605, '118, and '353 Patents
Would Not Have Been Obvious
Should Be Reversed**

HI-TECH INCORPORATES HEREIN BY REFERENCE THE

PORTIONS OF THE REPLY BRIEF FOR APPELLANT SANDOZ THAT

ADDRESS THE DISTRICT COURT'S JUDGMENT ON OBVIOUSNESS AS

IF FULLY STATED HEREIN.

## CONCLUSION

For the foregoing reasons, Defendant-Appellant Hi-Tech respectfully requests that:

(1) the district court's judgment that Hi-Tech has infringed the asserted claims of the '504, '479, and '605 patents be reversed, and

(2) the district court's judgment that the asserted claims of the '118 and '353 patents are not invalid for lack of written description be reversed.

Dated:  December 5, 2014                     Respectfully Submitted,

                                              /s/Steven Roth
                                              Steven Roth
                                              Locke Lord LLP
                                              3 World Financial Center
                                              New York, NY 10281
                                              Email:  sroth@hitechpharm.com

                                              Thomas J. Vetter
                                              LUCAS & MERCANTI, LLP
                                              30 Broad Street
                                              New York, NY 10004
                                              Email:  tvetter@lmiplaw.com

                                              *Attorneys for Defendant-Appellant*
                                              *Hi-Tech Pharmacal Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **CORRECTED REPLY BRIEF OF DEFENDANT-APPELLANT HI-TECH PHARMACAL CO., INC.**, was served December 8, 2014, on counsel of record for each of the parties through the court's electronic filing system.

/s/ Thomas J. Vetter
Thomas J. Vetter

Lucas & Mercanti, LLP
30 Broad Street
New York, NY 10004
Tel:   (212) 661-8000
Fax:   (212) 661-8002
Email:    tvetter@lmiplaw.com

*Attorneys for Defendant-Appellant*
*Hi-Tech Pharmacal Co., Inc.*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B) because this brief contains 4125 words, excluding the

parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of

Fed. R. App. P. 32(a)(5) and the type style requirements of

Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Times

New Roman, proportionally-spaced typeface using Microsoft Word 2013.


December 5, 2014                    /s/ Thomas J. Vetter
                                   Thomas J. Vetter

                                      Lucas & Mercanti, LLP
                                      30 Broad Street
                                      New York, NY 10004
                                      Tel:   (212) 661-8000
                                      Fax:   (212) 661-8002
                                      Email:   tvetter@lmiplaw.com

                                   *Attorneys for Defendant-Appellant*
                                   *Hi-Tech Pharmacal Co., Inc.*